Norman W. Lampton, Columbia, Mo., for debtor.

David A. Lander, St. Louis, Mo., for Federal Land Bank.

**In re Robert Maurice WELSH, Debtor.**

**Bankruptcy No. 87–02304–C–12.**

United States Bankruptcy Court,
W.D. Missouri, C.D.

Oct. 27, 1987.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

On May 22, 1987, Robert Maurice Welsh, short filed a petition under Chapter 12 of the Bankruptcy Code. Rick Fink was duly appointed Trustee. The principal creditors are the Federal Land Bank, the Internal Revenue Service and the Security Bank of Auxvasse. The Court cannot with any certainty determine the total of these three debts because debtor has not filed tax returns for at least 1984, 1985 and 1986 (all sans benefit of extensions) and the IRS has filed a claim for $293,493.34. Of this amount $157,336.84 is for taxes allegedly due for unpaid income taxes (1978 thru 1983) upon which Federal tax liens were

filed in 1985 and 1986. The balance is allegedly due for the three years for which no returns have been filed. Debtor has filed for a determination of tax liability but there is no contention but what there is a substantial liability, even if the years 1984, 1985 and 1986 are ignored.

On June 29, 1987, the Trustee filed a Motion to Dismiss. On July 10, 1987, debtor failed to appear at a Section 341 meeting. On July 15, 1987, the Federal Land Bank filed a Motion For Lift of Automatic Stay or Alternatively For Adequate Protection. On July 24, 1987 the Federal Land Bank filed a Motion to Dismiss and on August 19, 1987, debtor filed his plan. On August 27, 1987, the Court conducted hearings on the Motions to Dismiss and the Motions to Lift Stay or Allow Adequate Protection. The parties requested time to brief the issues and debtor and the Federal Land Bank filed their briefs on September 15th and 16th respectively. In the meantime the hearing on debtor's plan was continued from September 23, 1987, as originally scheduled. Also on September 16, 1987, the Federal Land Bank's Objections to Debtor's Plan were filed.

■ There are a number of reasons that the Court must grant relief to the Federal Land Bank. The first of these is that as best the Court can determine, the debtor is not the owner of the farm. On January 16, 1985, the debtor, Robert Maurice Welsh, by Warranty Deed conveyed the title to the farm to "Independence A Family Preservation" Trust. By the terms thereof, title was vested in Judy F. Welsh, Maurice R. Welsh and William C. Beeler. Debtor received "Trustee Certificates" as consideration. This Court has been furnished with nothing more than the Warranty Deed and the Declaration of Trust so no opinion can be passed on what the "Trustee Certificates" were or are. Debtor's counsel has labeled this as "a mail order will scheme" but there is no indication that debtor reserved even a life estate to himself. The trustees were not identified in any fashion, although the Court gleaned from the transcript of the Section 341 meeting that Judy F. Welsh is debtor's former wife, and Maurice R. Welsh is debtor's father. The Court also determined from said transcript that the third trustee is debtor's friend. In any event, based on the evidence presented, debtor is not the owner, nor even a "Trustee" holding title to the property. In view thereof, there is no reason to not allow the Federal Land Bank relief from the automatic stay, since it only operates on property of the estate and if debtor had severed his ownership in 1985, the real estate would not have become property of the estate at the time of filing. Debtor's counsel has stated that debtor is treating the "Trust" as though it was never created. That may be the debtor's position but an ex-wife and a friend and even a father who holds title may feel somewhat differently.

■ Another reason exists for the Court's action. At the outset of this case debtor was required to disclose his assets and liabilities. Not only did debtor fail to disclose the "trust" transfer, debtor failed to disclose the IRS tax liens in excess of $157,000.00. Nor was this all. Debtor likewise failed to disclose the debt owed to the State of Missouri for taxes. Also the Security Bank of Auxvasse is improperly listed. That Bank had a Circuit Court judgment rendered January 22, 1986, in the amount of $53,345.45. Apparently substantial payments had been made thereon and there is no mention of either the judgment or the payments. In debtor's first schedules said Bank is listed. In the amended schedules it is not. Debtor further failed to disclose that no tax returns had been filed with either the Federal or State bodies for 1984, 1985 or 1986. In the schedules the following appears:

3. TAX RETURNS AND REFUNDS. a) Where did you file your federal, state and municipal tax returns for the two years immediately preceding the filing of the original petition herein? (From schedule of person not engaged in business, pg. 1)

ANSWER: Yes.

or

6. TAX RETURNS AND REFUNDS. a) In whose possession are copies of your

federal, state and municipal income tax returns for the three years immediately preceding the filing of the original petition herein? (From schedule of person engaged in business, pg. 3).

ANSWER: Self.

Additionally, in the schedules filed May 22, 1987, debtor lists the value of the farm at $117,000.00. In the schedules filed August 18, 1987, debtor lists the value of the farm at $90,000.00.

Finally, we come to the plan that the debtor filed. It goes without saying that tax obligations may be stretched out over six years from date of assessment. Here that would date back to August 20, 1985 or forward to August 19, 1991. Within that period debtor's plan would propose to pay $1,732.92 (three years at $577.64). Since the plan does not state for how long it will exist, contrary to Section 1222(c), the Court can only surmise that the five years maximum allowed would produce $2,888.20 (or 5 × $577.64) during the possible life of the plan. It may well be that the IRS claim of $293,493.34 is ridiculous (although assessments and liens of $157,336.84 filed in 1985 and 1986 lend some credence thereto). But even if they were reduced by 90%, debtor's plan still could not pay the 10% remaining.

Next the plan provides for $12,545.00 annual payment from CRP payments. The problem is that debtor has not yet applied for the CRP program. There is absolutely no scintilla of evidence that debtor's farm is eligible for CRP, how many acres might be eligible, how much per acre debtor will bid, whether debtor's bid will be accepted, whether debtor has the required farm plan, when CRP will reopen for bid, what the grading, liming and fertilizing costs will be. To simply state in a plan that $12,545.00 will be received from CRP in 1987 and each year thereafter for the next nine years without having even applied for the program, is no less disturbing to this Court than basing a plan on $10.00 per bushel beans or $3.00 per bushel corn or annual visits from a rich tooth fairy. Something more than wishful thinking must be the cornerstone of any Chapter 12 plan.

To put it in the most basic terms, debtor's plan is:

(1) Not feasible.

(2) Defective.

(3) Does not fulfill statutory requirements.

(4) Cannot be confirmed.

(5) Provides no basis to amend or alter so that 1 through 4 above can be overcome.

In fact debtor's petition, schedules, conduct and plan force this Court to rule that none of debtor's acts in this proceeding were based on good faith, and were in fact intended to hinder and delay his creditors.

For all of the foregoing, the Court grants the Motion of the Federal Land Bank for Relief From The Automatic Stay and DISMISSES the petition of the debtor.